**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 19-22212-CIV-BLOOM/LOUIS**

STUART SAWYER, individually and on
behalf of others similarly situated,

                Plaintiff,

    v.

INTERMEX WIRE TRANSFER, LLC,

                Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND**
**INCORPORATED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

SUMMARY OF THE SETTLEMENT ....................................................................................1

ARGUMENT ..........................................................................................................................3

    I.      This Court should preliminarily approve this proposed Settlement. .......................3

          A.      Plaintiff and Class Counsel have and will continue to adequately represent the Class...................................................................................................5

          B.      The Settlement was negotiated at arm's-length, and there has been no fraud or collusion........................................................................................5

          C.      The Settlement provides substantial relief for the Class. ...........................7

                1.      The Settlement is preferable to continued litigation.......................7

                2.      The method of providing relief is effective. ....................................9

                 3.      The proposed award of attorneys' fees is fair and reasonable.......10

          D.      The Settlement treats all Class Members fairly.........................................11

    II.      The Settlement Class satisfies Rule 23...................................................................13

          A.      The members of the Class are so numerous that joinder is impracticable. .............................................................................................13

          B.      Questions of law or fact are common to the members of the Class. .........14

          C.      Plaintiff's claims are typical of the claims of the Class. ...........................15

          D.      Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.........................................................................16

          E.      The questions of law or fact common to the members of the Class predominate over any potential individualized questions. ........................16

          F.      A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the Class..................17

III.     The Parties' notice plan satisfies the requirements of Rule 23 and due process
         requirements. ...........................................................................................................19

CONCLUSION ...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdeljalil v. Gen. Elec. Capital Corp.*,
   306 F.R.D. 303 (S.D. Cal. 2015) ........................................................................14

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
   No. 08-248, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .........................................12

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................16, 17, 18

*Bellows v. NCO Fin. Sys., Inc.*,
   No. 07-1413, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) .................................16

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982) .............................................................................9

*Breslow v. Wells Fargo Bank, N.A.*,
   755 F.3d 1265 (11th Cir. 2014) ...........................................................................15

*Carriuolo v Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) .............................................................................14

*Charvat v. Allstate Corp.*,
   29 F. Supp. 3d 1147 (N.D. Ill. 2014) ....................................................................8

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) .....................................................................13, 14

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................19

*Estrada v. iYogi, Inc.*,
   No. 13-1989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ..................................12

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011) ...........................................................................19

*Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*,
   No. 08-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008) ................................17

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ...............................................................12, 15, 17

*Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020) .............................7

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) .....................................................................12

*In re Checking Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................13

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ..................................................................7, 13

*In re Netbank, Inc. Sec. Litig.*,
259 F.R.D. 656 (N.D. Ga. 2009) ..........................................................13, 14, 15

*In re Sandusky Wellness Ctr., LLC*,
570 F. App'x 437 (6th Cir. 2014) ................................................................18

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) .................................................................6

*Johnson v. Navient Solutions, Inc.*,
315 F.R.D. 501 (S.D. Ind. 2016) ...............................................................14

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ...................................................................16

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ............................................................ 16-17

*Knapper v. Cox Commc'ns, Inc.*,
329 F.R.D. 238 (D. Ariz. 2019) .................................................................14

*Kron v. Grand Bahama Cruise Line, LLC*,
328 F.R.D. 694 (S.D. Fla. 2018) ................................................................15

*Lavigne v. First Cmty. Bancshares, Inc.*,
No. 15-934, 2018 WL 2694457 (D.N.M. June 5, 2018) ........................................14

*Lee v. Ocwen Loan Servicing, LLC*,
No. 14-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015)...................................6

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ..................................15, 17

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) ................................................................16

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 660 (M.D. Ala. 1988)...............................................................6

*McCue v. MB Fin., Inc.*,
No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ........................................9

*Melanie K. v. Horton*,
No. 14-710, 2015 WL 1799808 (N.D. Ga. Apr. 15, 2015) .......................................3

*Murray v. Auslander*,
244 F.3d 807 (11th Cir. 2001) ...................................................................14

*O'Connor v. Worthington PJ, Inc.*,
No. 16-608, 2017 WL 6762436 (M.D. Fla. Dec. 13, 2017) .......................................5

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
311 F.R.D. 688 (S.D. Fla. 2015) ................................................................18

*Reliable Money Order, Inc. v. McKnight Sales Co.*,
  281 F.R.D. 327 (E.D. Wis. 2012) ............................................................................18

*Ressler v. Jacobson*,
  822 F. Supp. 1551 (M.D. Fla. 1992) ..........................................................................7

*Reyes v. BCA Fin. Servs.*, Inc.,
  No. 16-24077, 2018 WL 3145807 (S.D. Fla. June 26, 2018) ..................................14

*Roundtree v. Bush Ross, P.A.*,
  No. 14-357, 2015 WL 5559461 (M.D. Fla. Sept. 18, 2015) .............................19, 20

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011).........................................................................8

*Schwyhart v. AmSher Collection Servs., Inc.*,
  No. 15-1175, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017)....................................10

*Steinfeld v. Discover Fin. Servs.*,
  No. 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) ............................................12

*Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*,
  No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018) ..................................10

*West v. California Servs. Bureau, Inc.*,
  323 F.R.D. 295 (N.D. Cal. 2017) ..............................................................................14

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
  No. 12-2524, 2014 WL 11860700 (N.D. Ga. Oct. 16, 2014)....................................10

*Yuzary v. HSBC Bank USA, N.A.*,
  No. 12-3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .........................................9

## **Statutes**

47 U.S.C. § 227 ...................................................................................................................1

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................................................17

47 U.S.C. § 227(b)(3) ..................................................................................................17, 18

## **Other Authorities**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002).........................4, 5

Manual for Complex Litigation, Fourth (2004) .......................................................................4, 5

McLaughlin on Class Actions (8th ed. 2011)...............................................................................5

## Rules

Fed. R. Civ. P. 23(a) ..................................................................................14, 15, 16

Fed. R. Civ. P. 23(b)(3) ............................................................................18

Fed. R. Civ. P. 23(c) ..................................................................10, 19, 20

Fed. R. Civ. P. 23(e) ..................................................................*passim*

## INTRODUCTION

This case arises from autodialed wrong-number text messages Defendant Intermex Wire Transfer, LLC ("Intermex") allegedly sent to the cell phone numbers of Plaintiff and other non-customers, which Plaintiff asserts violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Intermex disputes that the texts were improper. Although the Parties disagree as to the merits of the case, they have agreed to resolve Plaintiff's claims on a class-wide basis.

The proposed Settlement calls for Intermex to pay $3,250,000 into a non-reversionary common fund for the benefit of a Settlement Class comprised of noncustomers whom Intermex text messaged using the same texting platform used to contact Plaintiff, between May 30, 2015 and October 7, 2019. Class Members who wish to receive a monetary benefit must certify that they were noncustomers at the time they received the call. Qualified claimants will receive a *pro rata* distribution of the Settlement Fund, less costs of notice and administration, attorneys' fees and expenses, and incentive award, estimated to exceed $400 each. Under the Settlement, all funds will be distributed for the benefit of the Class, and no money whatsoever will revert to Intermex.

This is an excellent result, considering the risks, burden, and expense of further litigation. There is substantial reason for this Settlement to be approved, and for the Class to be certified for purposes of judgment on the proposal, such that notice to the Class is appropriate. As such, Plaintiff asks that the Court preliminarily approve the Settlement, conditionally certify the Settlement Class, and permit notice to issue under the terms of the Agreement, as detailed herein.

## SUMMARY OF THE SETTLEMENT

The Settlement calls for Defendant to create a non-reversionary cash Settlement Fund of $3,250,000, *see* Settlement Agreement ("Agr.") ¶ 2.37, attached to the declaration of Plaintiff's counsel, Exhibit A, to compensate the following Settlement Class:

> All noncustomers successfully contacted by Intermex by text message, through use of the same texting platform that was used to contact Plaintiff, between May 30, 2015 and October 7, 2019.

*Id.* ¶ 3.1. Discovery shows that there were approximately 30,260 unique cell numbers from which Intermex received a text message reply coded as "Wrong Number" during the Class Period, although the final Class size may be more or less than this amount, as will be determined by the Parties' confirmatory discovery and notice process. <u>Exhibit A</u>, Burke Decl.¶ 13.

Notice to the Class will be effectuated by a Settlement Administrator, American Legal Claims Services, LLC ("ALCS"),[1] which will send mail notices in the form provided as Exhibit A to the Settlement Agreement to all Class Members whose names and addresses are identifiable through a reverse lookup of the 30,260 cellular telephone numbers, as well as email notice to all such persons for whom such information is available. Agr. ¶¶ 2.8.1-2.8.2, 6.1. Additional notice intended to capture Class Members who may not have viewed or received the mailed short-form notice will be effectuated through print and internet publication notice. *Id.* ¶ 6.2. The Settlement Administrator will also create a dedicated website containing relevant settlement documents, where Class Members may submit claims. *Id.* ¶ 6.3.

To obtain compensation from the Settlement, Class Members must submit a claim to the Settlement Administrator by mail or online through the settlement website. *Id.* ¶ 7.1. Each Class Member who submits a timely and valid claim will be entitled to his or her *pro rata* share of the Settlement Fund per cell number texted, less the costs of administration, attorneys' fees and expenses, and any incentive award to Plaintiff. *Id.* ¶¶ 4.1.3, 7.1.[2] Money remaining after the initial

---

[1]    This administrator was selected for appointment as Settlement Administrator following a competitive bidding process. Agr. ¶ 2.31.

[2]    Plaintiff will move for an award of Class Counsel's attorneys' fees and expenses, and an incentive award, to be paid from the Settlement Fund in advance of the objection deadline. Agr. ¶¶ 15.1, 15.2. Plaintiff anticipates seeking an incentive award of $15,000, and attorneys' fees of

distribution to valid claimants will be redistributed *pro rata* to those claimants who cashed their initial checks, to the extent administratively feasible. *Id.* ¶ 4.1.5. Amounts remaining after exhausting the redistribution process will be distributed as *cy pres*; Plaintiff asks that the Court designate the Public Justice Foundation and National Consumer Law Center as equal recipients of such. *Id.* ¶¶ 4.1.5.

Class Members may opt-out of or object to the Settlement. *Id.* ¶¶ 11.1-12.3.2. Those who do not exclude themselves will release claims tailored to the acts that gave rise to this case, i.e.:

> any and all TCPA or state court analog claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory that exist as of the date of the Preliminary Approval Order, arising out of Intermex's use of the texting platform used to text Plaintiff, to text the Class members. For the avoidance of doubt, and without limitation, this release only affects claims arising out of use of the texting platform, and does not include for example claims concerning the substance of such texts or transfers of money.

*Id.* ¶ 10.2. This release is thus narrowly tailored to telephone violations arising from Defendant's text messages, particularly those sent using the same dialing equipment used to call Plaintiff.

## ARGUMENT

### I.     This Court should preliminarily approve this proposed Settlement.

Under Fed. R. Civ. P. 23(e), "a class-action settlement may be approved if the settlement is 'fair, reasonable, and adequate.'" *Melanie K. v. Horton*, No. 14-710, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015) (quoting Fed. R. Civ. P. 23(e)(2)). "Approval is generally a two-step

---

one-third of the Settlement Fund, or $1,083,333.33, plus costs estimated to be less than $20,000. *Id.* at ¶ 5.02, Exs. A-C.

process in which a . . . determination on the fairness, reasonableness, and adequacy of the proposed settlement terms is reached." *Id.* (citation omitted).

Under Rule 23, the first step of the approval process is "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Manual for Complex Litigation, Fourth, § 21.632 (2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002). Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).

Grounds exist to give class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL 4th § 21.632; Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); *also* MCL 4th § 21.633-34; Newberg on Class Actions, § 11.25; *O'Connor v. Worthington PJ, Inc.*, No. 16-608, 2017 WL 6762436, at *6 (M.D. Fla. Dec. 13, 2017).

As explained below, consideration of these factors supports preliminary approving the Settlement, conditionally certifying the Class, and issuing notice.

**A. Plaintiff and Class Counsel have and will continue to adequately represent the Class.**

Plaintiff has vigorously prosecuted this action on behalf of the Class through active participation, including by rejecting a substantial individual settlement offer in favor of obtaining class relief, gathering information and materials, responding to discovery requests, staying apprised of the proceedings, and considering and ultimately entering into the Settlement. Exhibit A, Burke Decl. ¶ 14. There is no indication that Plaintiff has a conflict with any Class Member; his interests in obtaining redress for Defendant's nonconsensual text messages are fully aligned with the Class. *Id.*

Furthermore, Plaintiff has retained highly experienced counsel with expertise in TCPA and class action litigation. *Id.* ¶¶ 3-12 (Burke experience); Exhibit B, Howard Decl.¶¶ 2-13. Plaintiff's attorneys have vigorously prosecuted this action on a contingency basis, obtained critical discovery necessary to litigate and negotiate an informed settlement, and have the means and readiness to continue to advocate for the Class' best interests. Exhibit A, Burke Decl. ¶ 13. Accordingly, Plaintiff and Class Counsel have and will continue to adequately represent the Settlement Class.

**B. The Settlement was negotiated at arm's-length, and there has been no fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011);

Fed. R. Civ. P. 23(e)(2)(B) (identifying whether the proposal was negotiated at arm's-length as a relevant factor supporting approval).

Here, the parties negotiated their settlement at arm's-length before and after a formal mediation with a third-party neutral, Rodney A. Max. <u>Exhibit A</u>, Burke Decl. ¶ 13; *see Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator … lends further support to the absence of collusion."). Here, Mr. Max was instrumental in assisting the parties, and the terms of the Settlement have only been finalized after months of substantive, post-mediation back-and-forth. <u>Exhibit A</u>, Burke Decl. ¶ 13. Accordingly, there can be no doubt that the parties negotiated their settlement at arm's-length, and absent fraud or collusion. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (noting that there is a presumption of good faith in negotiation process, and finding it applicable in case in which Rodney Max participated as mediation, noting prior findings that Mr. Max is "probably one of the top mediators in the country").

Additionally, the Parties entered into the Settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with continued litigation. Before mediating, the parties exchanged first-party discovery, including obtaining data identifying the extent and nature of the wrong-number texting at issue, and exchanged pre-mediation briefs presenting the strengths and weaknesses of the Parties' respective positions. <u>Exhibit A</u>, Burke Decl. ¶ 13. As such, the Parties "conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation" before negotiating the settlement. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988).

**C.     The Settlement provides substantial relief for the Class.**

Plaintiff and his counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate. As such, and as further detailed below, the proposal should be preliminarily approved with an order directing notice to the Class.

**1.     The Settlement is preferable to continued litigation.**

The "costs, risks, and delay of trial and appeal" are relevant considerations to approval of a proposed class settlement. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993) (citing "the likelihood and extent of any recovery from the defendants absent . . . settlement" as a relevant consideration); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

Here, the costs, risks, and delay in continued litigation support notice and ultimate approval of the Settlement. Most importantly, the law relevant to the TCPA is under a state of flux. The Eleventh Circuit decided *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020), after the parties had agreed to settle the case. *Glasser* holds generally that in order for a system to be an "automatic telephone dialing system" under the TCPA, the system itself must generate numbers to be called. Given that the phone numbers at issue were derived from a list, it would be very difficult for Plaintiff here to prove that the system used satisfies the *Glasser* standard. If the case had continued, Plaintiff and the class would likely recover nothing at all.

While Plaintiff strongly believes in his claims, Defendant asserts a number of potentially case-dispositive defenses to them that poses considerable risk to Plaintiff's ability to certify a

litigation class or ultimately obtain relief. For example, Defendant contends that it did not use an autodialer to make the calls at issue, and that it had prior express consent to call some or all of the Class Members. *E.g.,* Dkt. 12, Answer p. 5-6 ("The text messages allegedly sent to Plaintiff and any members of the putative class were not sent using an automatic telephone dialing system" and "Intermex reasonably believed it had consent to send text messages or make calls to the numbers of any customers who consented to such communications.").[3] Defendant also argues that Plaintiff is not able to certify the class defines in his complaint, contending that a litigation class is unascertainable and that individual issues predominate. *Id*. at pp. 6-7.

Still, Plaintiff disputes Defendant's defenses and opposition to the certifiability of a litigation class, and thinks he would prevail. But his likelihood of success at class certification, summary judgment, or trial is far from certain. Litigation would continue to be lengthy and expensive if this action were to proceed. Although the Parties have conducted discovery applicable to the Settlement Class, absent approval of the Parties' Settlement, substantial additional work— including further adversarial discovery, class certification briefing, summary judgment briefing, and trial—would remain. A Rule 23(f) appeal would almost certainly follow any adversarial certification ruling, which would further delay any judgment in favor of the Class. Absent settlement, this case could conceivably continue to drag on for another year or more, all without any guarantee that the Class will obtain *any* redress for Defendant's alleged violations. The Settlement avoids these risks and provides immediate and certain relief. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent

---

[3]     Consent is a defense to a TCPA claim, for which the defense has the burden of proof. *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

risk, complexity, time, and cost associated with continued litigation.").[4]

Given the costs, risks, and delay of further litigation, the Settlement is reasonable. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### 2.    The method of providing relief is effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The 2018 amendment Committee Note to Rule 23(e)(2) says this factor is to encourage courts to evaluate a claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: cash payments. Here, use of dialer technology is not *per se* illegal; calls (including text message calls) to consumers who have consented to receive them are permissible. The parties therefore propose a claims process that permits persons who received nonconsensual calls to self-identify by affirming as much in their claim form. The claims process was designed to be accessible and straightforward, but at the same time deter unjustified claims without placing undue burdens on Class Members.

In order to make a claim, Class Members need only to fill out a simple, 1-page claim form

---

[4]    *See McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015) (noting courts "encourage parties to settle class actions early, without expending unnecessary resources," and citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12-3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013), for finding "early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

(*see* Agr. ¶ 7.1, Exs. A, D). identifying the Settlement Class Member's 1) name; 2) address; 3) cell phone number on which the claimant received an Intermex text; 4) current, additional contact telephone number, if available; and 5) contact email address, if available. Claimants must also certify that they received Intermext texts and were not customers of Intermex. *Id.* at Ex. D. Claim Forms will be reviewed for completeness, timeliness, and correctness by the Settlement Administrator, and the Parties will use their best efforts to resolve any claim dispute. *Id.* ¶¶ 7.3-7.4. This claims process is thus simple, straightforward, and accessible, while appropriately discouraging fraudulent claims by requiring a signed certification and verification process.

### 3. The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," is also relevant to whether the relief provided to the Class in a settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel anticipate seeking an award of fees of attorneys' fees not to exceed one-third of the Settlement Fund, or $1,083,333.33, plus costs. *Id.* ¶ 15.1, Exs. A-C.

This proposed fee amount falls squarely in line with other approved TCPA class settlements. *E.g., Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (awarding fees of one-third of fund in TCPA case); *Wreyford v. Citizens for Transp. Mobility, Inc.*, No. 12-2524, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-1175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) ("attorneys' fees … of one-third of the Settlement Fund ... is fair and reasonable"). Plaintiff's counsel achieved an excellent result for the Class despite substantial risk in prosecuting this action on a contingency basis, and they should be fairly compensated.

Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs prior

to the objection deadline that addresses the facts and law supporting their fee and cost request. The fee and costs request will likewise be clearly stated in the Class Notice. Agr. ¶ 15.1, Exs. A-C. Further, not only is this an entirely non-reversionary settlement—meaning that no money is going back to Defendant, period—but the Settlement ensures that all claims will be validated prior to the Court's fee determination.[5] *See* Agr. ¶¶ 2.11.5, 2.16. Thus, because attorneys' fees will only be paid after the Court is fully advised of the amount of benefits distributable to valid claimants, the timing concerns raised in the Federal Rules' Committee Notes are not applicable here. *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

        **D.    The Settlement treats all Class Members fairly.**

The Settlement provides meaningful relief to the Settlement Class, and treats all Class Members equitably relative to each other.

Under the Agreement, all Class Members have an equal opportunity to submit a simple, one-page claim form in order to obtain a *pro rata* share of the Settlement Fund, less notice and administration costs, attorneys' fees and expenses, and any incentive award. Agr. ¶ 4.1.3, Ex. D, Claims may be easily submitted by mail (including by simply filling out the return mail notice), or online, within a reasonable, ninety (90) day claims period. Agr. ¶¶ 2.11.5, 7.1. No later than sixty (60) days after the Final Settlement Date, the Settlement Administrator will mail a settlement check to each valid claimant. Agr. ¶ 7.5. There will even be further redistributions of any uncashed check amounts to the extent feasible. Agr. ¶ 4.1.5. This straightforward claims process and equal relief

---

[5]      The Claim Period contemplated under the Settlement is ninety (90) days from the initial mailing of Class Notice. Agr. ¶ 2.11.5. The Settlement contemplates payment of attorneys' fees and costs five (5) days after judgment is entered and final, including any appeal. Agr. ¶ 15.1.1.

across claimants supports the fairness of the Settlement.

The release contemplated under the Settlement is equitable among the Class, as well. Under the Agreement, all Class Members will provide a release of all TCPA and state analog claims, as of the date of Preliminary Approval, that arise out of Intermex's use of the texting platform used to text Plaintiff, to text the Class members. Agr.¶ 10.2 (further clarifying that it "only affects claims arising out of use of the texting platform, and does not include for example claims concerning the substance of such texts or transfers of money"). This release is thus narrowly tailored to the claims at issue in this case. The release does not favor or disfavor certain Class Members over others, since they were all subjected to Defendant's automated texts.

Further, although the amount that of Class Member payments under the Settlement cannot be determined with precision until the claims period is complete and the total number of valid claimants is known, Plaintiff estimates that each claimant is likely to receive approximately $429 or more,[6] which meets or exceeds what has been approved in other cases. *E.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving TCPA settlement estimated at $52.50 per class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving TCPA settlement estimated at $34.60/claimant); *Estrada v. iYogi, Inc.*, No. 13-1989, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminary approving TCPA settlement estimated at $40/class member); *Steinfeld v. Discover Fin. Servs.*, No. 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) ($46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-248, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ($40 each).

---

[6]   ($3,250,000 Settlement Fund - $200,000 estimated notice/administration costs - $15,000 service award - $1,083,333.33 attorneys' fees - $20,000 estimated maximum expenses) ÷ (15% claims rate x 30,000 estimated Class size) = approximately $429.25. Counsel's experience in wrong number TCPA cases is that many class members do not submit claims, so it is very likely that valid claimants will receive more than this.

The Parties' Settlement, therefore, falls within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (internal citation omitted).[7]

Because all relevant factors support approval of the Settlement and issuing notice to the Class, Plaintiff's motion should, respectfully, be granted.

## II.     The Settlement Class satisfies Rule 23.

Sending notice of the Settlement is also justified because the Court will likely be able to certify the Class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B)(ii). As detailed below, the Class meets the requirements for certification under Rule 23(a) and (b)(3).

### A.     The members of the Class are so numerous that joinder is impracticable.

Fed. R. Civ. P. 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).[8]

---

[7]      In determining whether a settlement is fair in light of the potential range of recovery, important is the maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *See In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011). This is because a settlement must be evaluated in light of the attendant risks associated with litigation. *Id.*

[8]      *But see In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) ("[A] plaintiff need not allege the exact number and identity of the class members, but must only establish that

13

Here, there were 30,260 unique cell numbers from which Intermex received a text message reply coded as "Wrong Number" during the Class Period. Exhibit A, Burke Decl.¶ 14. While this number is likely over-inclusive because some texts may have been miscoded, and under-inclusive because some call recipients may not have told Intermex that they were noncustomers, 30,000 is easily sufficient to show that joinder is impracticable. *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019) (certifying "wrong number" TCPA class, even though the precise number of class members was not known); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 15-934, 2018 WL 2694457, at *2-3 (D.N.M. June 5, 2018) (same); *Reyes v. BCA Fin. Servs.*, Inc., No. 16-24077, 2018 WL 3145807 (S.D. Fla. June 26, 2018), *reconsideration denied*, 2018 WL 5004864 (S.D. Fla. Oct. 15, 2018); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 302 (N.D. Cal. 2017), *leave to appeal denied sub nom. Membreno v. California Serv. Bureau, Inc.*, 2018 WL 1604629 (9th Cir. Mar. 27, 2018) (same); *Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016) (same); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (same).

**B.      Questions of law or fact are common to the members of the Class.**

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A 'common' issue is one that may be proved through the presentation of generalized proof applicable to the class as a whole. *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. at 664 (citing *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). "Rule 23 does not[,] [however,] require that all the questions of law and fact raised by the dispute be common." *Cox*, 784 F.2d at 1557; *see also Carriuolo v Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("For purposes of Rule 23(a)(2) even a single common question will do.").

---

joinder is impracticable through some evidence or reasonable estimate of the number of purported class members.").

Here, the claims of the members of the Class stem from the same factual circumstances—i.e., text messages sent to noncustomers via the same automated system. The most important question in the litigation is thus common to each and every Class Member: whether the system Intermex used to send those texts constitutes an "automatic telephone dialing system" ("ATDS") under the TCPA. Consequently, the Class satisfies Rule 23's commonality requirement. *See Gehrich*, 316 F.R.D. at 224 ("The proposed class also satisfies commonality . . . . Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) (finding commonality under similarly circumstances in TCPA case); *cf. Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 701 (S.D. Fla. 2018).

### C.    Plaintiff's claims are typical of the claims of the Class.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class. Fed. R. Civ. P. 23(a)(3). The "typicality" requirement seeks to ensure that a representative plaintiff "possess[es] the same interest and [has] suffer[ed] the same injury shared by all members of the class [s]he represents." *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. at 665.

Here, Intermex sent texts to Plaintiff's cell phone just like it did as to all Class Members using its automated texting system. Agr. ¶ 3.1. And Plaintiff, like all Class Members, is a non-customer and thus did not consent. *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014) (calls to non-customer were not consensual). Plaintiff's claims are thus typical of the claims of the members of the Class, because they rise and fall on the same set of facts and circumstances: They were non-customers who received text messages sent through Intermex's allegedly illegal texting system. *See Gehrich*, 316 F.R.D. at 224 ("The proposed class also satisfies … typicality. Each class member suffered roughly the same alleged injury: receipt of at least one

phone call or text message from Chase to her cell phone."); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-1413, 2008 WL 4155361, at *6 (S.D. Cal. Sept. 5, 2008) ("[T]he typicality requirement is met here. Plaintiff alleges that NCO violated the TCPA by calling his cellular telephone, without 'prior express consent,' using an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.' Plaintiff's claims are identical to the claims of the Class Members."); *Manno v. Healthcare Rev. Recovery Grp.*, 289 F.R.D. 674, 687 (S.D. Fla. 2013).

**D.     Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.**

Rule 23(a)(4) additionally requires that "the representative party must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff and … counsel are adequate if "counsel are qualified, experienced, and generally able to conduct the proposed litigation," and the "plaintiff[] [does not] have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).

Plaintiff's claims here are aligned with the claims of the Class. He thus has every incentive to vigorously pursue the claims of the Class, as he has done to date by remaining actively involved in this matter since its inception, participating in discovery, and involving himself in the settlement process. Exhibit A, Burke Decl. ¶ 15. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class actions, and TCPA actions in particular. *Id.* ¶¶ 3-12; Exhibit B, Howard Decl. ¶¶ 2-13. Adequacy is satisfied.

**E.     The questions of law or fact common to the members of the Class predominate over any potential individualized questions.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 634 (1997). "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be

common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657, at *4 (M.D. Fla. Aug. 14, 2008).

Here, there are numerous questions of law or fact common to all Class Members, including whether Defendant's dialer-made texts constituted use of an ATDS under the TCPA, whether the calls were nonconsensual, and whether the alleged violations were "willfully or knowingly" committed. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(3). These questions can all be answered on a class-wide basis: Either the dialer Defendant used falls under the auspices of the TCPA, or it does not; either Defendant has consent to call non-customers, or it does not; and either Defendant acted willfully, or it did not. Consequently, predominance is satisfied. *See Gehrich*, 316 F.R.D. at 226 ("The common questions listed above are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues. The proposed class satisfies Rule 23(b)(3)."); *Malta*, 2013 WL 444619, at *4 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met.").

**F.    A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the Class.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2)

the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify the class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").[9]

In any event, no one member of the Class has an interest in controlling the prosecution of this action because Plaintiff's claims and the claims of the members of the Class are the same. Further, the interests of Class Members in individually controlling the prosecution of separate claims is small because, given the statutory basis of their claims and limited, statutorily-set recovery of $500 per violation (or up to $1,500 at the Court's discretion upon a finding of willfulness), *see* 47 U.S.C. § 227(b)(3), many Class Members are likely to be unaware of their rights, and have damages that cannot feasibly be brought on an individual basis. *See In re Sandusky Wellness Ctr., LLC*, 570 F. App'x 437 (6th Cir. 2014) (vacating order denying class certification in TCPA action, and suggesting that considering the maximum statutory damages available under the TCPA, the plaintiff's claims were such that "denial of a plaintiff class sometimes defeats the case as a practical matter because the stakes are too small and the litigations

---

[9]     Even in the non-settlement context, proceeding with TCPA claims on behalf of a class is generally "superior to litigation of the issues by individuals." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012); *see also, e.g., Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (certifying a class action under the TCPA, finding superiority).

costs are too high for the individual plaintiff to go forward"). Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

### III. The Parties' notice plan satisfies the requirements of Rule 23 and due process requirements.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement to class members must be the "best notice that is practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

As such, "[t]he adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action." *Roundtree v. Bush Ross, P.A.*, No. 14-357, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, the Parties propose a robust notice program involving direct mail notice to Class Members after a reverse lookup, a dedicated settlement website, and publication notice, with a toll-free hotline, to be administered by a well-regarded, third-party administrator, ALCS. *See* Agr. ¶¶ 2.8-2.8.3, 2.31, 6.1-6.5. As such, the Parties' notice plan complies with Rule 23 and due process because, inter alia, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the class definition and claims, issues, and defenses; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the Class, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information

regarding Class Counsel's request for fees/expenses and an incentive award; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); *Roundtree*, 2015 WL 5559461, at *1 ("The class notice provides reasonably adequate information about the nature of the action and the class settlement, and provides sufficient details for class members to determine whether to remain in the class or opt out. Accordingly, the form and content of the class notice are approved."); *see also* Agr. at Exs. A-C.

In sum, the Parties' notice plan ensures that Class Members' due process rights are amply protected, and it should be approved. Fed. R. Civ. P. 23(c)(2)(A).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court (1) conditionally certify the Settlement Class, (2) conditionally approve the parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (3) appoint Plaintiff as the Class Representative, (4) appoint Plaintiff's counsel as Class Counsel, (5) approve the Parties' proposed notice program, confirm that it is the best practicable under the circumstances and that it satisfies due process and Rule 23, and direct that it be implemented, (6) set a date for a final approval hearing, (7) set deadlines for members of the Class to submit claims for compensation, and to object to or exclude themselves from the Settlement, and (8) grant such further and other relief the Court deems reasonable and just.

## CERTIFICATE OF PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(3), the undersigned certifies that he conferred in good faith with defense counsel regarding this motion, and that Defendant does not oppose the relief sought herein.

Respectfully submitted,

STUART SAWYER, individually and
on behalf of others similarly situated

Dated: March 18, 2020                    By: _/s/ William "Billy" Peerce Howard_____
                                         William "Billy" Peerce Howard
                                         (FBN 103330)
                                         THE CONSUMER PROTECTION FIRM, PLLC
                                         4030 Henderson Blvd.
                                         Tampa, FL 33629
                                         Telephone: (813) 500-1500
                                         Facsimile (813) 435-2369
                                         billy@theconsumerprotectionfirm.com

                                         Alexander H. Burke (*pro hac vice*)
                                         BURKE LAW OFFICES, LLC
                                         155 N. Michigan Ave., Suite 9020
                                         Chicago, IL 60601
                                         Telephone: (312) 729-5288
                                         aburke@burkelawllc.com

                                         *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 18, 2020, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/ William "Billy: Peerce Howard_