# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 19-cv-22212-BLOOM/Louis

STUART SAWYER, individually and on
behalf of others similarly situated,

          Plaintiff,

   v.

INTERMEX WIRE TRANSFER, LLC,

          Defendant.

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**Final Approval Hearing:**
**September 1, 2020 at 9:00 ET**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

STRUCTURE OF THE SETTLEMENT .............................................................................1

CLAIMS ADMINISTRATION ...........................................................................................2

RESPONSE OF THE CLASS .............................................................................................4

ARGUMENT .......................................................................................................................4

I.      The Settlement Meets All Requirements for Final Approval. .................................4

        A.      The Class Representative and Class Counsel have adequately represented the
                Class. .............................................................................................................5

        B.      The Settlement was negotiated at arm's-length by vigorous advocates, and there
                has been no fraud or collusion. .....................................................................7

        C.      The Settlement provides substantial relief for the Class. .............................8

                1.      Diverse and substantial legal and factual risks weigh in favor of
                        settlement. ..........................................................................................8

                2.      The monetary terms of the Settlement fall favorably within the range of
                        prior TCPA class action settlements. ...............................................10

        D.      The overwhelmingly positive reaction to the Settlement supports
                final approval. ..............................................................................................12

        E.      The proposed attorneys' fees are fair and reasonable. ................................13

II.     The Distribution of Notice Was Consistent with Due Process Requirements.................14

III.    Certification of the Settlement Class Is Appropriate. ...........................................15

        A.      The Rule 23(a) requirements are satisfied. .................................................15

        B.      The Rule 23(b)(3) requirements are satisfied. ............................................17

IV.     The Court Should Grant the Class Representative's Requested Incentive Award. ...........18

CONCLUSION ..................................................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ................................................................................. 9

*Allan v. Pa. Higher Educ. Assistance Agency*,
  2020 WL 4345341 (6th Cir. July 29, 2020) ............................................................. 9

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 17

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ............................................................................. 5

*Bayat v. Bank of the West*,
  2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ......................................................... 4

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) ................... 10

*Brotherton v. Cleveland*,
  141 F. Supp. 894 (S.D. Ohio 2001) ....................................................................... 12

*Cabot E. Broward 2 LLC v. Cabot*,
  2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) .................................................... 14, 18

*Cooper v. Nelnet, Inc.*,
  2015 WL 12839778 (M.D. Fla. Aug. 4, 2015) ....................................................... 18

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ................................................................................. 6

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) ............................................................................. 16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...................................................................................... 7

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) .................................................................................... 9

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020) .................................................................................... 9

*Facebook, Inc. v. Duguid*,
  2020 WL 3865252 (U.S. Jul. 9, 2020) ..................................................................... 9

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020) .................................................................................. 9

*Glasser v. Hilton Grand Vacations Co.*,
  948 F.3d 1301 (11th Cir. 2020) ........................................................................ 9, 13

*Gordon v. Hunt*,
  117 F.R.D. 58 (S.D.N.Y. 1987) ............................................................................. 3

*Grannan v. Alliant Law Grp., P.C.*,
  2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ........................................................... 4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 10

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................... 12

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................. 6, 11

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011) ....................................................................... 7, 16

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .............................................................. 6, 8

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ................................................................ 6, 10, 12

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ............................................................................... 5

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................... 6

*Johnson v. Brennan*,
  2011 WL 1872405 (S.D.N.Y. May 17, 2011) ........................................................ 7

*Juris v. Inamed Corp.*,
  685 F.3d 1294 (11th Cir. 2012) ...................................................................... 3, 14

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) ............................................................................... 6

iii

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ................................................................. 4, 6, 11

*Kron v. Grand Bahama Cruise Line, LLC*,
    328 F.R.D. 694 (S.D. Fla. 2018) ...................................................................... 16

*Lopez v. Hayes Robertson Grp., Inc.*,
    2015 WL 5726940 (S.D. Fla. Sept. 29, 2015) .................................................. 14

*Markos v. Wells Fargo Bank, N.A.*,
    2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ...................................................... 11

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) .......................................................................... 9

*McCrary v. Elations Co.*,
    2015 WL 12746707 (C.D. Cal. Aug. 31, 2015) ................................................ 15

*Michel v. WM Healthcare Solutions, Inc.*,
    2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ....................................................... 4

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 14, 2009) ....................................................... 8

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................. 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 12

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
    311 F.R.D. 688 (S.D. Fla. 2015) ..................................................................... 18

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ........................................................... 12

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ...................................................................... 8

*Sadowski v. Med1 Online, LLC*,
    2008 WL 2224892 (N.D. Ill. May 27, 2008) ............................................. 11, 17

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    2010 WL 2486346 (C.D. Cal. June 15, 2010) ................................................... 8

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012) ................................................................... 11

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
  2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) ........................................................ 11

*Walco Investments, Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996) ........................................................................... 17

*Wilkins v. HSBC Bank Nevada, N.A.*,
  2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................................................ 4

*Wright v. Nationstar Mortgage LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................................................ 11

## Statutes

47 U.S.C. § 227 ........................................................................................................... 1

47 U.S.C. § 227(b)(3) ................................................................................................ 11

## Other Authorities

Fed. Judicial Ctr.,
  Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide (2010)..... 3

Manual for Complex Litig. ....................................................................................... 5, 15

McLaughlin on Class Actions (8th ed. 2011) ............................................................ 7

Newberg on Class Actions ......................................................................................... 5

## Rules

Fed. R. Civ. P. 23 .................................................................................................... 14

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 15

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 16

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 16

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 16

Fed. R. Civ. P. 23(e) ................................................................................................. 4

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 5

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................... 6

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(i)..............................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii)..........................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ..............................................................................................12

## INTRODUCTION

After arm's-length negotiations, and with the assistance of well-respected mediator Rodney A. Max, Plaintiff Stuart Sawyer  and Defendant Intermex Wire Transfer, LLC ("Intermex") agreed to a $3.25 million class settlement in this case, alleging that Intermex caused nonconsensual, autodialed text messages to be sent to noncustomers, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Pursuant to the Court-approved notice plan, direct mail and email notice of the Settlement was disseminated to the Settlement Class, supplemented with internet notice via a Google Ads campaign and an interactive settlement website. The reaction of the Class to this Settlement has been overwhelmingly positive: Zero objections have been filed, and only two Class Members have opted out.  The approximately approved 3,775 claimants are expected to receive individual settlement distributions of approximately $500 each. And following notice under CAFA, no state attorney general, nor the Attorney General of the United States, has objected.

The Settlement is an excellent result for the Class, particularly in view of the risks and delays involved in continued litigation and the recovery per claimant.  Considering the overwhelmingly favorable support for the Settlement from the Class Members, Plaintiff respectfully requests that the Court finally approve the Settlement, approve Plaintiff's motion for attorneys' fees, expenses, and an incentive award (moved for separately) in its entirety, and enter a final judgment and order dismissing this case.

## STRUCTURE OF THE SETTLEMENT

The Settlement provides relief to the following Class of persons:

All noncustomers successfully contacted by Intermex by text message, through use of the same texting platform that was used to contact Plaintiff, between May 30, 2015 and October 7, 2019.

1

Dkt. 30, Preliminary Approval Order ¶ 5. The parties provided the Settlement Administrator with a Notice List of 39,609 unique cell phone numbers identified as meeting the Class definition. Exhibit A, ALCS Decl. ¶ 3. Per the reverse-lookup process contemplated under the Agreement, Dkt. 29-2, Agr. ¶ 6.1, using the Notice List, the Settlement Administrator identified 47,345 records with a postal address or email that could be sent notice. *See* Exhibit A, ALCS Decl. ¶ 3.

The Settlement Relief will be allocated as follows: First, not later than fourteen days after the Final Approval Order becomes final and non-appealable, Intermex shall pay any funds remaining due under the Agreement. Dkt. 29-2, Agr. ¶ 4.1.1. Next, no later than sixty days after the Final Settlement Date, the Settlement Administrator will mail approved claimants a check on a *pro rata* basis, less the cost of Attorney's Fees and Costs, Notice and Administration costs, and any incentive award. *Id.* ¶¶ 4.1.3, 7.5. Finally, amounts remaining in the Settlement Fund after the initial round of distribution will be redistributed to those claimants who cashed their initial checks, to the extent administratively feasible; otherwise, such funds will be distributed to a Court-approved *cy pres* recipient. *Id.* ¶ 4.1.5 (proposing even split between National Consumer Law Center and Public Justice Foundation).

## CLAIMS ADMINISTRATION

On March 20, 2020, this Court granted preliminary approval to the Settlement. Dkt. 30. After a bidding process to ensure that settlement administration would be accomplished in a cost-effective manner, the Parties retained American Legal Claim Services, LLC ("ALCS") as Settlement Administrator to implement a comprehensive notice plan for Class Members.  *See* Dkt. 30, Order ¶¶ 10-11 (approving ALCS and ordering notice to Class Members).

Pursuant to this notice plan, ALCS mailed 47,345 postcard notices in the form approved by the Court. Exhibit A, ALCS Decl. ¶ 10. Of these, a total of 8,896 notices were returned by the

2

U.S. Postal Service. *Id.* ¶ 12. ALCS ran a search for an updated address for Class Members whose postcard notice was returned as undeliverable, and updated and re-mailed the postcard to 3,085 Class Members. *Id.* ALCS also succeeded in sending the Court-approved email notice to 27,599 email addresses associated with individuals on the Notice List, and provided additional notice through an online Google Ads campaign, which resulted in more than 10 million impressions. *Id.* ¶¶ 13, 17. All told, direct notice was provided to approximately 91.10% of the 47,345 individuals identified as being associated with a "wrong number" phone number on the Notice List. *Id.* ¶ 15. This meets established due process requirements for class notice. *See* Fed. Judicial Ctr., Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of between 70-95%); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (noting that "due process does not require that class members actually receive notice[,]"citing *Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987), for stating that a "combination of mailed notice to all class members who can be identified by reasonable effort and published notice to all others is the long-accepted norm in large class actions").

In addition to notice through affirmative outreach, ALCS also established a website, www.intermextcpasettlement.com, by which Class Members could view settlement documents and make claims, as well as a toll-free phone number through which Class Members could receive additional information about the Settlement. Exhibit A, ALCS Decl. ¶¶ 6-7. ALCS also provided notice to relevant governmental entities pursuant to the Class Action Fairness Act ("CAFA"). *Id.* ¶ 4. There have been no objections to any aspect of the Settlement. *Id.* ¶ 19.

## <u>RESPONSE OF THE CLASS</u>

Pursuant to the Court's Preliminary Approval Order, Class Members had until August 3, 2020, to submit a claim under the Settlement. Dkt. 30, at ¶ 20. As of the date of this motion, ALCS has received a total of 3,775 approved claims, plus an additional 382 claims that are continuing to be processed. <u>Exhibit A</u>, ALCS Decl. ¶ 18.

Based on the 39,609 phone numbers on the Notice List and total of 4,157 claims submitted, the claims rate is approximately 10.50%, which meets or exceeds claims rates in other approved consumer class action settlements. *Id.*; *see Bayat v. Bank of the West*, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Grannan v. Alliant Law Grp.*, P.C., 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (under 3%).

That thousands of Class Members approved the benefits provided by Settlement enough to submit a claim, with not a single objection and only two opt-outs, represents a positive response from the class of persons who stand to benefit. Thus, for this reason and as further detailed below, the Settlement should be approved.

## <u>ARGUMENT</u>

**I.     The Settlement Meets All Requirements for Final Approval.**

Under Fed. R. Civ. P. 23(e), a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." "In most situations, unless the settlement is clearly

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Newberg on Class Actions, § 11:50.

Under Rule 23, the first step in the class settlement approval process is a preliminary determination that the Court will likely be able to approve the proposal and certify the class, which the Court conducted in March 2020. *See* Dkt. 30. After class notice, the second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); Manual for Complex Litig., § 21.633-34.  Where, as here, the proposed settlement would bind class members, it may only be approved after a hearing and a finding that it is fair, reasonable, and adequate, after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### A.   The Class Representative and Class Counsel have adequately represented the Class.

"There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). In that light, courts should consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate

appreciation of the merits of the case before negotiating." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D. Fla. 2011) (internal quotations omitted); *see also* Fed. R. Civ. P. 23(e)(2)(A) (identifying whether "the class representatives and class counsel have adequately represented the class" to be a relevant factor).

Here, the Settlement was achieved after the exchange of pertinent discovery and investigation into the extent and nature of Intermex's text messages to the Class, pre-mediation position statements outlining the Parties' respective positions, a formal mediation with a well-respected and experienced mediator, and months of back-and-forth between counsel for the Parties thereafter to finalize the Agreement. Exhibit B, Burke Decl. ¶ 14. Plaintiff was thus fully apprised of the facts, risks, and obstacles involved with continued litigation, and did everything possible to get the best possible result for Class Members—achieving a Settlement exceeding the vast majority of TCPA class settlements, in providing an expected per-Class Member Settlement Relief of approximately $500. *Compare, e.g., Kolinek*, 311 F.R.D. at 494 ($30/claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ($34.60/claimant).

In addition, a Plaintiff and Class Counsel are adequate if "counsel are qualified, experienced, and generally able to conduct the proposed litigation," and the "plaintiff[] [does not] have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). "In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Here, Plaintiff's claims are aligned with the claims of the other Class Members. He thus had every incentive to vigorously pursue the claims of the Class, as he has done by remaining actively involved in this matter since its inception, participating in discovery, and remaining involved in the settlement process. Exhibit B, Burke Decl. ¶ 15. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class actions, and TCPA actions in particular. *Id.* ¶¶ 2-11; Dkt. 31-2, Howard Decl. ¶¶ 2-13.

Here, Plaintiff and his counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. Exhibit B, Burke Decl. ¶ 16. Class Counsel also believe that the benefits of the Parties' Settlement far outweigh the delay and considerable risk of proceeding to a contested class certification and trial. *Id.* Because Plaintiff and Class Counsel have adequately represented the Class, this factor supports approval.

**B.      The Settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also* Fed. R. Civ. P. 23(e)(2)(B) (providing that whether "the proposal was negotiated at arm's length" is a relevant factor in the approval determination); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").[1]

---

[1] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson*

Here, the Settlement Agreement resulted from good faith, arms'-length settlement negotiations over many months, including an in-person mediation session with well-respected mediator Rodney A. Max on October 7, 2019.[2] Dkt. 29-2, Agr. ¶ 1.2; Exhibit B, Burke Decl. ¶ 14. In advance of the mediation, Plaintiff and Intermex submitted detailed mediation submissions setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, the parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See Wilson v. Everbank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an established mediator).

## C.   The Settlement provides substantial relief for the Class.

The Settlement in this matter is fair, reasonable, and adequate, as demonstrated by the overwhelmingly positive response of Class Members.

### 1.   Diverse and substantial legal and factual risks weigh in favor of settlement.

The Court must also consider "the likelihood and extent of any recovery from the defendant[] absent ... settlement." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1249 (S.D. Fla. 2016) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (identifying "the costs, risks, and delay of trial and appeal" as relevant to approval determination); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("[T]he Plaintiff's likelihood of success at trial is weighed against the

---

*Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

[2]    *See* https://www.uww-adr.com/biography/rodney-a-max.

amount and form of relief contained in the settlement.").

While Plaintiff strongly believes in his claims, Intermex asserted a number of potentially case-dispositive issues and defenses that, absent settlement, raised significant risk of zero recovery for himself or the class.

Indeed, an element of Plaintiff's and the class' *prima facie* case requires establishing that an ATDS was used to send the text message calls at issue. 47 U.S.C. § 227(b)(1)(A)(iii). Indeed, although the Ninth Circuit's *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018), was the only Circuit Court decision on this point when the parties mediated, after the parties committed to this settlement the Eleventh Circuit held that systems like the one Intermex used are likely not ATDS. *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020). There is now a circuit split on the issue, [3] and last month the United States Supreme Court accepted *certiorari* to address the split. *Facebook, Inc. v. Duguid*, __ S.Ct. __, 2020 WL 3865252 (U.S. Jul. 9, 2020). If the Supreme Court were to side with the Eleventh Circuit on what constitutes an ATDS, the claims in this case would likely be worthless.

The law applicable to the TCPA saw some radical changes in advance of and during the pendency this action. For example, in 2018, the D.C. Circuit undid binding regulatory precedent from the FCC concerning what constitutes an "automatic telephone dialing system" ("ATDS" or "autodialer") under the TCPA in *ACA Int'l v. FCC*, 885 F.3d 687, 695 & 706 (D.C. Cir. 2018).

There are also procedural risks. Intermex disputed whether Plaintiff would be able to

---

[3]    *Cf. Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020); *but see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (imposing significantly broader definition of an ATDS that includes equipment with the capacity "to store numbers to be called ... and to dial such numbers"); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) (similar); *Allan v. Pa. Higher Educ. Assistance Agency*, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020) (similar).

successfully certify the class he defines in his complaint on a litigation basis, contending that manageability concerns not present in the settlement context would preclude certification.

In short, Plaintiff disputes every one of Intermex's defenses, but the risk of losing at summary judgment, class certification, or trial—particularly given the current status of the law and nature of his wrong-number texting claims—supports the settlement, particularly in light of the substantial relief obtained. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### 2. The monetary terms of the Settlement fall favorably within the range of prior TCPA class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 319 ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.").

The Settlement provides Class Members with real monetary relief that, at approximately $500, equals the $500 base per-violation statutory damages available under the TCPA, *see* 47

U.S.C. § 227(b)(3). The exceptional value to the Class[4] is further supported by the fact that this expected individual recovery is *in addition to* payment of attorneys' fees and other costs, despite the TCPA's lack of statutory fee shifting. *Id.* Further, many courts have deemed the TCPA's statutory damages too small to incentivize a significant number of individual actions, meaning Class Members can obtain this substantial benefit despite the fact that, absent settlement, the vast majority of them would not otherwise obtain *any* redress for the alleged violations at issue. *See, e.g., Sadowski v. Med1 Online, LLC*, 2008 WL 2224892, at \*5 (N.D. Ill. May 27, 2008) (finding, in TCPA case, that "[i]n consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages may be too insignificant to provide class members with incentive to pursue a claim individually"); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, 2013 WL 6498245, at \*11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that, since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). The approximately $500 in per-claimant relief expected here thus represents real monetary value to Class Members as compensation for the texts at issue.

The Settlement, therefore, is well within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and

---

[4]      *Compare Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at \*4 (N.D. Ga. Jan. 30, 2017) (approving $24 per claimant in a TCPA class action); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at \*2 (N.D. Ill. Aug. 29, 2016) (granting final approval to TCPA class settlement where anticipated claimant recovery was $45); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 790 ($34.60); *Kolinek*, 311 F.R.D. at 493 (approximately $30).

the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also Id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* Each Class Member here had an equal opportunity to claim in for their *pro rata* share of Settlement Benefits, and the absence of objections or opt-outs thus further support the equitable nature of the Settlement amongst the Class.[5]

    **D.**    **The overwhelmingly positive reaction to the Settlement supports final approval.**

As a result of the notice that ALCS distributed, 3,775 Class Members claims have been approved, with not a single Class Member objecting and only two requests for exclusion from the Settlement. *See* Exhibit A, ALCS Decl. ¶¶ 18-20. This overwhelmingly favorable reaction to the Settlement supports its final approval.  *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV*, *Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of

---

[5]    *See* Fed. R. Civ. P. 23(e)(2)(D) (identifying whether "the proposal treats class members equitably relative to each other" as a relevant factor to approval).

the settlement.").

Here, there were not "few" objections to the settlement—there were <u>no</u> objections.  This reaction to the Settlement by the Class supports approval.

> **E.     The proposed attorneys' fees are fair and reasonable.**

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(e)(2)(C)(iii). Though discussed in greater detail in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award, Dkt. 31, Class Counsel's request for fees in the amount of one-third of the Settlement Benefits, or $1,083,333.33, plus costs, falls in line with other TCPA class settlements in the Eleventh Circuit and elsewhere, and is thus reasonable.[6] This is particularly the case given the contingent nature of Class Counsel's work on behalf of the Class, the risks faced given the novel aspects of this action (including, for example, based on Intermex's use of a texting platform it contends does not constitute an autodialer under the TCPA, and on which the Eleventh Circuit has imposed a very restrictive definition in *Glasser*), and the terrific result achieved, affording approved claimants about $500 each.

Under the Parties' Agreement, there is no "clear-sailing" provision, and Class Counsel will not be paid any awarded fees until at least five days after both the Final Approval Order and Judgment are final and no longer appealable. Dkt. 29-2, Agr. ¶¶ 2.13, 2.17, 15.1.1. The Claim Period closed on August 3, 2020, Dkt. 30 ¶ 20, and the Court thus can make its decision as to final approval and fees with a sufficient expectation of how the fees will affect the amount of

---

[6]     *E.g., Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (fees of one-third of fund in TCPA case); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (same); *Schwyhart v. AmSher Collection Servs., Inc.*, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding one-third in fees "fair and reasonable").

per-Class Member Settlement Benefits. Hence, this is not one of those settlements with a post-final approval claims deadline that leaves the amounts each claimant might receive entirely open-ended:[7] The Settlement Administrator knows the number of timely claims received, which permits the Parties to represent with reasonable certainty that, if the Court grants fees, costs, and the incentive award as requested, each approved claimant will receive approximately $500.[8] The reasonableness and timing of Class Counsel's requested fees thus further support approval.[9]

## II.    The Distribution of Notice Was Consistent with Due Process Requirements.

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015); *see also* Fed. R. Civ. P. 23(e)(2)(C)(ii) (identifying "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" as a relevant factor to approval).  However, "due process does not require that class members actually receive notice." *Juris*, 685 F.3d at 1321 (collecting cases).

Here, direct mail notice was successfully delivered to 91.10% of all persons for whom records were available, further bolstered email notice and an online Google Ads campaign, as

---

[7]    *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

[8]    [$3,250,000 fund - $220,000 estimated admin. - $1,083,333.33 fees - $9,254.22 costs - $15,000 incentive award] ÷ [3,775 approved claims] = approximately $<u>509.24</u>

[9]    As explained more fully in their fee petition, Dkt. 31, Class Counsel also seek reimbursement for their case-related expenses, which totaled $9,254.22. Such reimbursements are routinely granted from a common fund settlement, especially where, as in this case, it is supported by counsel's declarations and limited to truly case-relevant expenses such as mediation costs, case-related travel costs, and case initiation and service charges and fees. *See* Dkt. 31-1, Burke Decl. ¶ 17; Dkt. 31-2, Howard Decl. ¶ 14; *see also Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *9 (S.D. Fla. Nov. 9, 2018) ("[C]ourts regularly reimburse class counsel for their out-of-pocket litigation costs when a request for reimbursement is 'supported by adequate documentation, and the Court finds the costs to be reasonable and necessary to the representation of the class.'") (citations omitted).

well as a dedicated settlement website. <u>Exhibit A</u>, ALCS Decl. ¶ 15.  The notice program thus far

exceeds the minimum due process requirements.  Further, the claims process was straightforward

and accessible: Claims could be submitted by simply returning the postage-prepaid form on the

postcard notice, Dkt. 29-2, Agr. ¶ 7.1(a) & Ex. A; mailing in the one-page Claim Form

accessible from the Settlement Website, *Id.* ¶ 7.1(a) & Ex. D; or by submitting one's claim

electronically through the Settlement Website itself, *Id.* ¶ 7.1(b). The effectiveness of the notice

program is also evident by the claims rate falling above typical parameters for consumer class

actions[10]—in addition to the fact that not a single Class Member objected. As such, notice

satisfied due process, and the Settlement should be approved.

**III.     Certification of the Settlement Class Is Appropriate.**

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class

for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). Dkt. 30 ¶ 5. The Court

directed notice of the proposed Settlement, thereby informing Class Members of the existence

and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out,

and the date, time and place of the fairness hearing. *Id.* ¶¶ 11-16; *see* Manual for Complex Litig.,

at §§ 21.632, 21.633. Nothing has occurred since preliminary approval that should alter this

Court's conclusions. As such, the Settlement Class should be certified under Fed. R. Civ. P. 23.

**A.     The Rule 23(a) requirements are satisfied.**

The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied because the

Settlement Class of noncustomers Intermex texted using the same texting platform it used to

contact Plaintiff between May 30, 2015 and October 7, 2019, includes at least the 39,609 phone

---

[10]     *E.g., McCrary v. Elations Co.*, 2015 WL 12746707, at *9 (C.D. Cal. Aug. 31, 2015)
("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5
percent.") (citation omitted).

numbers on the Notice List that the Parties identified through wrong-number indications in Intermex's data. Exhibit C, ALCS Decl. ¶ 3; Dkt. 29-2, Agr. ¶¶ 3.1, 6.1; *see Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.").

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied because there are many questions of law and fact common to the Settlement Class, such as whether Intermex's texting platform constitutes an autodialer under the TCPA, whether Defendant had consent, and whether Defendants' calls were willful. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. at 673 ("The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'") (citation omitted); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 701 (S.D. Fla. 2018) (finding commonality met along similar lines in certifying TCPA class action).

Fed. R. Civ. P. 23(a)(3)'s typicality requirement is satisfied because Plaintiff's TCPA claims, which derive from the same text messaging technology through which all Class Members were called, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 674 ("[I]f 'the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims.'").

Finally, the adequacy requirement of Fed. R. Civ. P. 23(a)(4) is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class, and has been committed to prosecuting this action on behalf of the class. Exhibit B, Burke

Decl. ¶ 15; *see Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 327 (S.D. Fla. 1996). Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See* <u>Exhibit B</u>, Burke Decl. ¶¶ 2-11; Dkt. 31-2, Howard Decl. ¶¶ 2-13.

### B. The Rule 23(b)(3) requirements are satisfied.

The predominance requirement of Rule 23(b)(3) is satisfied because the claims of the Class Members all arise from the same type of text messaging, using the same texting platform, targeting noncustomers, only—thereby ensuring a predominance of common questions concerning whether the texting platform constitutes an autodialer under the TCPA, whether consent existed for such texts to noncustomers, and whether Intermex's violations were willful— all of which Plaintiff asserts can be determined on a class-wide basis through generalized evidence.[11] *See Sadowski*, 2008 WL 2224892, at *4-5 (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant elected who was to receive the [ ] faxes"). Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Moreover, resolution of tens of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Palm Beach*

---

[11]     Defendant disagrees that a non-settlement class can be certified in this action, but submits to certification of the Class here for purposes of settlement, only. Dkt. 29-2, Agr. ¶ 1.3.

*Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit).  For these reasons, certification of the Class for settlement purposes is appropriate.

**IV.     The Court Should Grant the Class Representative's Requested Incentive Award.**

As detailed more fully in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award, Dkt. 31, Plaintiff also seeks an incentive award in the amount of $15,000 for his service on behalf of the class in this action.

Without Plaintiff Sawyer's participation, the class would not be receiving anything. Indeed, Plaintiff refused to entertain any individual offers of settlement. Exhibit B, Burke Decl. ¶ 15. His involvement in assisting Class Counsel's pre-suit investigation, participating in discovery, and in the settlement process, were crucial to the successful resolution of this action, and warrant an award "both to compensate [him] for [his] efforts and to encourage others to do the same in future actions[.]" *Cabot*, 2018 WL 5905415, at *11; *see* Exhibit B, Burke Decl. ¶ 15. As such, Plaintiff respectfully submits that his request for a $15,000 incentive award is in line with awards awarded in similar actions, is reasonable, and should be granted. *See, e.g., Cook v. Wal-Mart Stores, Inc.*, No. 3:16-cv-00673 (M.D. Fla. June 5, 2020) (Dkt. 210) (awarding $20,000 incentive award to TCPA class representative and citing, inter alia, *Cooper v. Nelnet, Inc.*, 2015 WL 12839778, at *2 (M.D. Fla. Aug. 4, 2015), for applying $25,000 incentive award).

<u>CONCLUSION</u>

Plaintiff respectfully submits that the Settlement in this matter is an excellent result for the Class, and the exceptional response from Class Members suggests that they agree.  For this and the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement and enter a Final Approval Order and Judgment, in the form attached hereto as Exhibits C and D.

Respectfully submitted,

STUART SAWYER, individually and
on behalf of others similarly situated

Dated: August 12, 2020          By:  /s/ William P. Howard
                                    William P. Howard (FBN 103330)
                                    THE CONSUMER PROTECTION FIRM, PLLC
                                    4030 Henderson Blvd.
                                    Tampa, FL 33629
                                    Telephone: (813) 500-1500
                                    billy@theconsumerprotectionfirm.com

                                    Alexander H. Burke (*pro hac vice*)
                                    BURKE LAW OFFICES, LLC
                                    909 Davis St., Suite 500
                                    Evanston, IL 60201
                                    Telephone: (312) 729-5288
                                    aburke@burkelawllc.com

                                    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 12, 2020, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                     /s/ William P. Howard

## CERTIFICATION OF CONFERRAL

Plaintiff certifies that the parties met and conferred with respect to this motion on August 12, 2020, and that Defendant does not oppose the relief sought herein, *except* that, consistent with the settlement agreement, Defendant does not take a position as to the amount of fees.

                                     /s/ William P. Howard